UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DIANNE CLAY,<br>Plaintiff,<br>v.<br>CAROLYN W. COLVIN, Commissioner of Social Security,<br>Defendant. | No. SACV 15-1208-AGR<br>MEMORANDUM OPINION AND ORDER |

Plaintiff Dianne Clay filed this action on July 29, 2015. Pursuant to 28 U.S.C. § 636(c), the parties consented to proceed before the magistrate judge. (Dkt. Nos. 11, 12.) On June 3, 2016, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues. The court has taken the matter under submission without oral argument.

Having reviewed the entire file, the court reverses the decision of the Commissioner and remands for reconsideration of Dr. Ramos' opinion as set forth below.

I.

**PROCEDURAL BACKGROUND**

On November 2, 2011, Clay filed an application for disability insurance benefits, alleging an onset date of August 31, 2006. The application was denied initially and on reconsideration. AR 107. Clay requested a hearing before an ALJ. On October 8, 2013, the ALJ conducted a hearing at which Clay, a medical expert and a vocational expert ("VE") testified. AR 270-93. On January 24, 2014, the ALJ issued a decision denying benefits. AR 104-14. On June 3, 2015, the Appeals Council denied the request for review. AR 1-6. This action followed.

II.

**STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this court has authority to review the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or if it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995) (per curiam); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

## III.

## DISCUSSION

### A. Disability

A person qualifies as disabled, and thereby eligible for such benefits, "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation and quotation marks omitted).

### B. The ALJ's Findings

The ALJ found that Clay last met the insured status requirements on September 30, 2010. AR 109.

Following the five-step sequential analysis applicable to disability determinations, *Lounsburry v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006),[1] the ALJ found that Clay had the following severe impairments through the date last insured: arteriosclerotic cardiovascular disease; angina; hypertension; hyperlipidemia; diabetes mellitus; chronic low back pain, status post surgery for a ruptured disc at L5-S1 on the left in 2002; and obesity. AR 109.

The ALJ found that, through the date last insured, Clay had the residual functional capacity ("RFC") to perform light work except that she could lift or carry 20 pounds occasionally and 10 pounds frequently; sit, stand and walk six hours in an eight-hour workday; and occasionally climb stairs, bend, balance, stoop, kneel, crouch and crawl. She must avoid climbing ladders, ropes or scaffolds, and avoid work at

[1] The five-step sequential analysis examines whether the claimant engaged in substantial gainful activity, whether the claimant's impairment is severe, whether the impairment meets or equals a listed impairment, whether the claimant is able to do his or her past relevant work, and whether the claimant is able to do any other work. *Lounsburry*, 468 F.3d at 1114.

unprotected heights or around dangerous or fast moving machinery. AR 110. The ALJ found that Clay was capable of performing past relevant work as an administrative clerk. AR 113.

**C. Opinions of Treating Physicians**

Clay contends the ALJ erred in evaluating the opinions of two treating physicians, Dr. Ramos and Dr. Edelman.

An opinion of a treating physician is given more weight than the opinion of non-treating physicians. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007). To reject an uncontradicted opinion of a medically acceptable treating source, an ALJ must state clear and convincing reasons that are supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005). When a treating physician's opinion is contradicted by another doctor, "the ALJ may not reject this opinion without providing specific and legitimate reasons supported by substantial evidence in the record. This can be done by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Orn*, 495 F.3d at 632 (citations and quotation marks omitted). "When there is conflicting medical evidence, the Secretary must determine credibility and resolve the conflict." *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002) (citation and quotation marks omitted).

"'The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician *or* a treating physician.'" *Ryan v. Comm'r*, 528 F.3d 1194, 1202 (9th Cir. 2008) (citation omitted) (emphasis in original). However, a non-examining physician's opinion may serve as substantial evidence when it is supported by other evidence in the record and is consistent with it. *Andrews v. Shalala*, 53 F.3d 1035, 1041 (9th Cir. 1995); *see also Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002).

**1. Dr. Ramos**

On October 7, 2013 – roughly three years after the date last insured – Dr. Ramos completed a residual functional capacity form. AR 637-40. Dr. Ramos diagnosed coronary artery disease, diabetes, major depression and low back pain. Clay had chest pain with stress or anxiety. Dr. Ramos opined that Clay had a fair prognosis. AR 637. Dr. Ramos opined that Clay could never lift or carry any weight. AR 639. Clay could sit 30 minutes continuously before she had to move around for 5-10 minutes, and could sit a total of two hours in an eight-hour workday. Clay could stand or walk for less than 15 minutes before having to rest, and could stand and/or walk a total of one hour in an eight-hour workday. She would require up to eight extra breaks during the workday. AR 638-39. Clay would likely be absent more than three times per month. AR 640.

Treating records submitted to the Appeals Council indicate that five months later in March 2014, Clay presented with worsening chest pain. She reported taking up to 100 nitroglycerin per month. AR 52, 87-88. After cardiac catheterization, she was diagnosed with critical 3-vessel coronary artery disease and unstable angina, with well preserved left ventricular function. She underwent urgent coronary bypass surgery. AR 52, 54, 62-65.

The question, however, is whether Clay can establish disability beginning on or before the date last insured, September 30, 2010. The ALJ discounted Dr. Ramos' opinion because it was inconsistent with the record as a whole on or before September 30, 2010. AR 112.

Clay became a patient at Dr. Ramos' office in 2009. AR 637. Before then, she had a history of chest pain. In February 2006, her exercise test showed no evidence of chest pain or ischemia. AR 617-18, 630. In August 2007, Clay complained of chest pain when walking 15-30 minutes or running. She had no chest pain at rest. AR 624.

Close to two years later, in March 2009, Clay presented at the emergency room with chest pain for the past three weeks. The chest pain occurred at rest but increased

when she walked too much. The pain lasted 15-20 minutes, and she was taking nitroglycerin "regularly." AR 595-96; *see also* AR 581. Her cardiolite stress test was negative for ischemia, and she had a normal ejection fraction. AR 594, 599. Her one-day rest and vasodilator stress cardiac spectrum perfusion scintigraphy was negative for ischemia and indicated normal perfusion with LV function and wall motion within normal limits. AR 609. Her heart had a regular rate and rhythm without rub, gallop or murmur, and was normal in size. AR 539, 607. Her electrocardiogram indicated normal sinus rhythm, nonspecific T wave abnormality and prolonged QT. AR 598. She was discharged with a diagnosis of chest pain, noncardiac, depression, hypertension and hyperlipidemia. AR 594.

Subsequent treatment notes from Dr. Ramos' office in 2009 indicate Clay continued to have chest pain with "extended periods of walking" and reported that nitroglycerin is the only thing that helps her. AR 579. Her diagnosis was chest pain, diabetes (new), hypertension (controlled), anxiety/depression and chronic low back pain. AR 578-80. In July 2009, Clay continued to report chest pain. AR 576. In October 2009, Clay reported she had stopped going to ortho. AR 573. In November 2009, Clay inquired about disability. AR 572. In January 2010, Clay stated she was leaving town for a funeral. AR 570. In August 2010, Clay reported no issues and was continued on her medication regimen. AR 569.

In January 2011, after the date last insured, Clay reported having shortness of breath the day before and being stressed over her son's situation. AR 568. In October 2011, Clay was continued on her medications. AR 560. In June 2012, Clay reported moving to Irvine in January. She went to urgent care and then the Centinela emergency room in April 2012. She reported taking five nitroglycerin the previous night. The treatment note indicated Clay's last cardiac evaluation was two years ago. She was diagnosed with angina, mild diabetes, type 2, controlled and stable, and lumbago (for which Clay reported using vicodin daily). AR 636. In July 2012, Clay reported

using two bottles of nitroglycerin in two weeks, and waking up every one to two hours with chest pain. Clay was advised that she must receive cardiac evaluation, and if she has chest pain she must go to the emergency room. AR 635. In August 2012, Clay reported that she went to the emergency room in Texas. Her cardiac workup was negative but she was scheduled for a stress test. Additional medications had resolved her chest pain. AR 634. In December 2012, Clay reported chest pain that was not resolved with medication. In May 2013, Clay returned for a refill of medications. AR 632. That was her last visit to Dr. Ramos' office. AR 90 (last physical 5/13).

The treating records beginning March 2009 support Dr. Ramos' opinion that Clay could stand or walk about 15 minutes before having to rest; could stand and/or walk a total of one hour in an eight-hour workday; and would require up to eight extra breaks during the workday. AR 638-39. As of March 2009, Clay's chest pain occurred *both* at rest and when she walked 15-30 minutes, and the pain lasted 15-20 minutes. She was using nitroglycerin "regularly." AR 595-96. The court is cognizant of the fact that records of Clay's urgent coronary bypass surgery in March 2014 discuss her progressively worsening anginal symptoms for the past three to four years, which would date from March 2010, before the date last insured. AR 52. However, treatment records from one year earlier, March 2009, are consistent with Dr. Ramos' opinion, and it is unclear whether the hospital where surgery was performed had those records.

Accordingly, this matter is remanded for reconsideration of Dr. Ramos' opinion, for the period beginning March 2009, that Clay could stand or walk about 15 minutes before having to rest; could stand and/or walk a total of one hour in an eight-hour workday; and would require up to eight extra breaks during the workday regardless of whether Clay is sitting, standing or walking, with each extra break lasting 20-30 minutes for chest pain to resolve. The court notes that the vocational expert testified that if Clay

had to be off task 20% of the workday, there would be no jobs that she could perform.[2] AR 292.

**2. Dr. Edelman**

Dr. Edelman submitted a report dated December 12, 2013. AR 641-44. He performed surgery for a ruptured disc at L5-S1 in 2002. Clay has pain in her lower back and lower left extremity in a sciatic distribution radiating down into the calf. Her left sole is numb except for the toes. Clay reports taking ½ vicodin tablet six times per day. Dr. Edelman noted Clay has "some tenderness at the low back" with flexion at the wait limited to 40 degrees. Her gait is normal, she walks well and there is no muscle weakness or atrophy. AR 641, 643. Dr. Edelman concluded that Clay "is effectively disabled for any work." AR 643.

The ALJ discounted Dr. Edelman's opinion because it was not consistent with the record as a whole, and Dr. Edelman did not examine Clay from the alleged onset date through the date last insured. The ALJ's reasoning is supported by substantial evidence. Long Beach Clinic notes indicate Clay reported having a car accident in February 2010, and had not been to the clinic since August 2007. Clay was observed getting up from a bench in the waiting room, walking and getting on the examination table with "ease." AR 621. She put down and picked up her purse with ease. There was no spasm or tenderness to palpation along the spine or paraspinal area. Motor strength was 5/5. Her vicodin was re-filled and she was advised to continue home back strength and stretch. *Id.* The ALJ did not err.

---

[2] Moreover, the record is unclear as to the basis for the medical expert's opinion that Clay could perform light work in light of her chest pain at rest as of March 2009.

**IV.**

**ORDER**

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for reconsideration of Dr. Ramos' opinion as described above for the period beginning March 2009.

IT IS FURTHER ORDERED that the Clerk serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: June 24, 2016

Alicia G. Rosenberg

ALICIA G. ROSENBERG
United States Magistrate Judge